IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:14-CV-295-F

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MOTION FOR |
| ) | VOLUNTARY DISMISSAL |
| $107,702.66 IN UNITED STATES ) | WITHOUT PREJUDICE |
| CURRENCY SEIZED FROM LUMBEE ) | |
| GUARANTY BANK ACCOUNT NUMBER ) | |
| 82002495, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, pursuant to Federal Rule of Civil Procedure 41(a)(2), hereby moves to voluntarily dismiss this case without prejudice. In support of this motion, the plaintiff states as follows:

1. In a Complaint filed on December 23, 2014 (DE #1) the plaintiff sought the forfeiture of the subject currency under 31 U.S.C. § 5317 on the basis that the bank account from which it was seized was involved in the illegal structured deposit of funds in violation of 31 U.S.C. § 5324. The United States filed an Amended Complaint as of right on April 30, 2015 (D.E. 15).

2. In a Declaration submitted with the Amended Complaint, Andrew Pappas, a Special Agent with the North Carolina State Bureau of Investigation, and Federal Task Force Officer with the

United States Department of Treasury, Internal Revenue Service, Criminal Investigation ("IRS-CI") detailed a pattern of 301 deposits into the seized bank account between January 4, 2011 and April 24, 2014, totaling more than $2 million, which appeared to be structured to evade the Currency Transaction Report (CTR) threshold of $10,000. The Declaration noted that 116 of these transactions involved deposits of between $9,077 and $9,999. The Declaration further detailed some of these transactions, which included several instances of deposits being made on two consecutive days for amounts that together totaled more than $10,000, giving rise to probable cause that the deposits were deliberately made in amounts less than $10,000 for the purpose of evading federal CTR reporting requirements. The bank account was owned by L & M Convenient Mart, Inc. Lyndon McLellan was the President of said company, and Mary Floyd was the Vice President, both of whom were authorized signors on the company's bank account at Lumbee Guaranty Bank.

3. The Declaration also noted that in 2008, Special Agent Charles Butler of the United States Department of Agriculture, Office of Inspector General, had interviewed store owner Lyndon McLellan on November 7, 2008 about allegations that Mr. McLellan had been engaged in structuring transactions back in 2008. Special Agent Butler informed Mr. McLellan in 2008 that structuring bank transactions to avoid federal reporting

requirements was a violation of federal law. The Declaration indicates that Mr. McLellan signed a Notification of Law on November 7, 2008, indicating that he understood the Federal laws pertaining to structuring.

4. The Declaration was submitted in person to The Honorable Robert B. Jones, Jr., United States Magistrate Judge, along with an application for a warrant to seize said bank account. Judge Jones determined that there was probable cause to believe that the bank account was subject to forfeiture; and on July 29, 2014, he signed the warrant authorizing the United States to seize the property, pursuant to federal law.

5. The Amended Complaint also attached a copy of the Notification of Law that was signed by Mr. McLellan in 2008. That Notice notified Mr. McLellan in writing that banks were required to file Currency Transaction Reports for any currency transactions over $10,000, and that federal law "prohibits individuals from structuring transactions to avoid the reporting and recordkeeping requirements." The Notice indicated to Mr. McLellan that violation of such laws "are punishable with prison sentences of up to ten years in prison, and/or monetary fines equal to, or even greater than, the amount of the illegal transaction." The Notice also informed Mr. McLellan that any future violation of these laws "could result in prosecution and/or seizure and forfeiture of all property involved in, or

traceable to, such violation." Mr. McLellan signed a statement saying, "I have read this warning, and understand the above-referenced Federal laws." Despite this warning, however, the company owned and controlled by Mr. McLellan continued to engage in illegal structuring of transactions, as alleged in the Declaration.

6. On July 30, 2014, Mr. McLellan was interviewed by Federal and State law enforcement agents concerning the seizure of his bank account and the alleged structuring. Mr. McLellan was shown a copy of the Notice of Law referenced above. He acknowledged that it was his signature, and he also acknowledged that he understood the contents of that document when he signed it in 2008. He also indicated in the interview that his niece, Mary Floyd, worked for him as the bookkeeper at the store, and that she typically made the cash deposits at the bank. He also acknowledged that he was aware that the store would sometimes have more than $10,000 in cash to be deposited at one time.

7. On July 30, 2014, Mary Floyd was interviewed by State and Federal law enforcement agents. She acknowledged that Mr. McLellan is the President of L & M Convenient Mart, Inc., which corporation is the owner of the store and the bank account that was seized. She also acknowledged that she was the Vice-President of such company, and that she has worked full time at the store for the last 14 years (which would have included

2008). She indicated that she normally does all of the banking for the company. Ms. Floyd acknowledged that she was aware that the bank files a form for cash transactions involving more than $10,000, and that she has known about such requirement for a long time. She also admitted that there were times in which the cash that she intended to deposit was more than $10,000, and that in those instances, she would put some of the money back in the store's safe in order to keep the cash deposit amount less than $10,000. She admitted that she did this in order to keep the bank from filing the form with the government. When structuring was explained to Ms. Floyd, she said that she was guilty and that she was sorry. She also said during the interview that Mr. McLellan made all the major decisions at the store.

8. The United States declines to proceed further in litigation in light of the U.S. Department of Justice Policy Directive 15-3, effective March 31, 2015 (copy attached), under which a forfeiture action like this, where there is no probable cause that the funds structured were generated from otherwise unlawful activity, would not be commenced. While the policy is not retroactive and, therefore, inapplicable to the present case, and while it has no force of law, being merely a guide to the exercise of prosecutorial discretion, the plaintiff chooses

to exercise its discretion not to continue with the litigation of this case at this time.

ACCORDINGLY, it is requested that the Court dismiss this case without prejudice.

A proposed order is being submitted herewith.

Respectfully submitted this 13th day of May, 2015.

THOMAS G. WALKER
United States Attorney

BY: /s/ G. Norman Acker, III
G. NORMAN ACKER, III
Attorney for Plaintiff
Assistant United States Attorney
Deputy Chief, Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: norman.acker@usdoj.gov
N. C. Bar No. 12839

## CERTIFICATE OF SERVICE

This is to certify that on May 13, 2015, a copy of the foregoing Motion for Voluntary Dismissal was provided to the below-listed counsel electronically via ECF:

James R. Lawrence, III
Robert Everett Johnson
Wesley Hottot

THOMAS G. WALKER
United States Attorney


BY: /s/ G. Norman Acker, III
    G. NORMAN ACKER, III
Attorney for Plaintiff
Assistant United States Attorney
Deputy Chief, Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: norman.acker@usdoj.gov
    N. C. Bar No. 12839