IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-00295-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| $107,702.66 in United States Currency | ) | |
| Seized from Lumbee Guaranty Bank Account | ) | |
| Number 82002495, | ) | |
| Defendant. | ) | |

This matter is before the court on the Government's Motion for Voluntary Dismissal Without Prejudice [DE-18]. For the reasons stated below, the motion is DENIED, and the case will be dismissed with prejudice.

## I. STATEMENT OF THE CASE

On December 23, 2014, the Government filed its Complaint [DE-1] in this case, seeking forfeiture of L&M's Lumbee Guaranty Bank account containing $107,702.66. On January 2, 2015, the Warrant of Arrest and Notice *In Rem* [DE-4] issued. In April 2015, McLellan and L&M filed claims to the seized property [DE-6, -7] and an Answer [DE-13] to the Complaint. On April 30, 2015, the Government filed an Amended Complaint [DE-15]. On May 13, 2015, the Government moved to voluntarily dismiss without prejudice [DE-18].

## II. BACKGROUND

Under 31 U.S.C. § 5313, banks and other financial institutions are required to file a report with the federal government on any currency transaction in an amount greater than $10,000.00. 31 U.S.C. § 5313(a) (2012); 31 CFR § 103.22(b) (2010). It is a crime for an individual or entity

to structure transactions in such a way as to avoid this reporting requirement, regardless of whether the structured funds were involved in or derived from any other illegal activity. 31 U.S.C. § 5324(a). Currency involved in an illegally structured transaction "may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases." 31 U.S.C. § 5317(c)(2).

Asset forfeiture is a powerful tool in the Government's hands, made even more powerful by the fact that indigent claimants to seized property are typically not entitled to court appointed representation. Even otherwise non-indigent claimants may be unable to afford counsel, once the Government has seized their bank accounts.[1] The House Committee on the Judiciary has described the potential effects on innocent citizens thusly:

> Even should a property owner prevail in a civil forfeiture proceeding, irreparable damage may have been done to the owner's interests. For instance, if property is used as a business, its lack of availability for the time necessary to win a victory in court could have forced its owner into bankruptcy. If the property is a car, the owner might not have been able to commute to work until it was won back. If the property is a house, the owner may have been left temporarily homeless (unless the government let the owner rent the house back). . . . [E]ven when the government's case is extremely weak, the owner must often settle with the government and lose a certain amount of money in order to get the property back as quickly as possible.

H.R. Rep. No. 106-192, at 17 (1999). Concerned with the inherent inequalities in and potential for abuse of the civil forfeiture system, Congress enacted the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202. *See* H.R. Rep. No. 106-192. The Act was "designed to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make

---

[1] The court may choose to allow counsel, appointed to represent an individual in a criminal case, to also represent that individual in related civil forfeiture proceedings. 18 U.S.C. § 983(b)(1)(A). Additionally, individuals who are facing forfeiture of their primary residence are entitled to court appointed representation. 18 U.S.C. § 983(b)(2)(A). Neither of these provisions provide any assistance to a person whose bank account is seized by the Government, but who faces no corresponding criminal charges.

2

themselves whole after wrongful government seizures." *Id.* at 11. To that end, one of CAFRA's most significant provisions allows a claimant who has substantially prevailed in a civil forfeiture proceeding to recover from the United States reasonable attorney fees and litigation costs. 28 U.S.C. § 2465(b)(1).

## III. RELEVANT FACTUAL HISTORY

Since 2001, Lyndon McLellan has owned and operated L&M Convenient Mart ("L&M") in Fairmont, North Carolina. Opp. Mot. Dismiss [DE-23] at 5. In 2008, a number of federal agents visited McLellan to discuss an apparent pattern of bank withdrawals in amounts just shy of $10,000.00. *Id.* at 6; Mot. Dismiss [DE-18] at 2. Such withdrawals raised suspicions of structuring under 31 U.S.C. § 5324. At the end of that interview, agents presented McLellan with a Notification of Law, which explained that banks are required to file Currency Transaction Reports for all currency transactions over $10,000.00, and that it is a federal crime to structure transactions in order to avoid these reporting requirements. Opp. Mot. Dismiss [DE-23] at 6–7; Mot. Dismiss [DE-18] at 2–3. McLellan signed the Notification. Opp. Mot. Dismiss [DE-23] at 7; Mot. Dismiss [DE-18] at 3.

On July 30, 2014, federal agents again visited McLellan. This time, they discussed seizure of L&M's bank account at Lumbee Guaranty Bank as a result of suspected structuring activity. Opp. Mot. Dismiss [DE-23] at 9; Mot. Dismiss [DE-18] at 4. The previous day, the Government had obtained a warrant to seize the account based on a declaration submitted to United States Magistrate Judge Robert B. Jones, Jr. Opp. Mot. Dismiss [DE-23] at 8; Mot. Dismiss [DE-18] at 3. The declaration detailed the 2008 investigation and interview of McLellan, as well as new evidence of suspected structuring activity, including 116 transactions

3

between January 4, 2011, and April 24, 2014, in amounts between $9,077.00 and $9,999.00. Government's Reply Mem. [DE-26] at 1.

In March 2015, the Department of Justice ("DOJ") announced that it would no longer pursue forfeiture in cases where the currency involved in allegedly structured transactions was derived from an otherwise legal source.[2] Opp. Mot. Dismiss [DE-23] at 4; Mot. Dismiss [DE-18] at 5–6. The Government sought dismissal of this case forty-three days later, in light of the new policy. Mot. Dismiss [DE-18] at 5–6. In its motion to dismiss, the Government notes that the policy is not retroactive and lacks the force of law. *Id.* Nevertheless, the Government "chooses to exercise its discretion not to continue with the litigation of this case at this time." *Id.* While the parties agree that the case should be dismissed, they disagree as to whether that dismissal should be with prejudice or without.

## IV. STANDARD OF REVIEW

Rule 41(a)(2) of the Federal Rules of Civil Procedure allows a plaintiff to move for a voluntary dismissal of an action without prejudice at any time. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court." *Id.* When deciding whether to allow such a dismissal, the court generally considers whether the nonmovant will suffer substantial legal prejudice if the motion is granted. *See Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986).

## V. DISCUSSION

### A. Dismissal with prejudice is appropriate.

McLellan and L&M ("Claimants") argue that a dismissal without prejudice would likely prevent them from recovering attorney fees and costs under CAFRA, or at least make such

---

[2] The Internal Revenue Service had announced a similar policy in October 2014.

4

recovery significantly more difficult. Under CAFRA, a claimant is entitled to attorney fees, litigation costs, and interest if he "substantially prevails" in a civil forfeiture proceeding. 28 U.S.C. § 2465(b)(1).

The Government argues, essentially, that a consideration at this stage of whether Claimants will be able to seek recovery under CAFRA puts the cart before the horse. Instead, the Government urges that the court must first consider only the narrow issue of whether its dismissal should be with prejudice or without. Only after that determination has been made, according to the Government, can the court turn to any award of fees and costs to the Claimants. This approach, however, appears to be grounded in a misapprehension of the standard for deciding a motion to dismiss under Rule 41(a)(2).

The Government asserts that a district court must employ a four-factor test when deciding a motion to dismiss under Rule 41(a)(2). Government's Reply Mem. [DE-26] at 5 ("In evaluating substantial prejudice, a court looks to four factors: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) an insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation (defined as whether a motion for summary judgment is pending)." (citing *Gross v. Spies*, Nos. 96-2146, 96-2203, 96-2150, 96-2149, 96-2147, 96-2204, 1998 WL 8006, at *5 (4th Cir. Jan. 13, 1998))). The Government's rule statement implies that the factors listed by the Fourth Circuit in *Gross* are somehow exclusive. They are not. In fact, immediately after listing the factors, the *Gross* court clarified—in the very next sentence—that "[t]hese factors are not exclusive . . ., and any other relevant factors should be considered by the district court depending on the circumstances of the case." *Gross*, 1998 WL 8006, at *5. The non-exclusive nature of these listed factors is consistent with the approach taken in other circuits. *See, e.g.*, *Walter Kidde*

5

*Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1337 (Fed. Cir. 2007); *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997); *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir. 1986). Further, it is consistent with the spirit of Rule 41(a)(2), which "empower[s] district courts to exercise discretion over voluntary dismissals" to protect nonmovants from unjust results. *GO Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007).

In its Reply Memorandum, the Government addresses each of the four factors listed in *Gross*, explaining why "[n]one of these factors counsel dismissal with prejudice." Government's Reply Mem. [DE-26] at 5. What the Government fails to address, however, is the sole argument submitted by Claimants in opposition to such a dismissal—that it would likely preclude them from seeking recovery under CAFRA. *See id.* at 4 ("The Claimants' legal argument is singular: dismiss with prejudice, because if not, then attorney's fees and costs are unavailable."). The court turns now to that argument.

Claimants argue that a dismissal of the forfeiture proceeding without prejudice would prevent them from being deemed to have substantially prevailed, thereby disqualifying them from recovery of attorney fees and costs under CAFRA. The court must determine, therefore, (1) whether such a disqualification would amount to the substantial legal prejudice that would defeat a motion to voluntarily dismiss without prejudice, and (2) whether a dismissal without prejudice would, in fact, produce such a result.

### 1. Loss of the ability to pursue recovery under CAFRA would be a substantial legal prejudice to Claimants.

"Legal prejudice" has not been defined precisely, but courts generally consider the *Gross* factors, discussed above, as well as any other relevant factors. *Gross*, 1998 WL 8006, at *5; *see also Ohlander v. Larson*, 114 F.3d at 1537; *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354,

6

358 (10th Cir. 1996); *Hobbs v. Kroger Co.*, No. 98-1831, 1999 WL 156045, at *1 (4th Cir. March 23,1999). In *Metro. Fed. Bank v. W.R. Grace & Co.*, 999 F.2d 1257, 1262–63 (8th Cir. 1993), for example, the Eighth Circuit held that a defendant suffered a clear legal prejudice where the plaintiff moved to dismiss without prejudice in order to avoid the defendant's statute of limitations defense. The court reasoned that a proven affirmative defense to the claim was more than a mere tactical advantage, and as such, its loss would be a substantial legal prejudice to the defendant. *Id.*; *see also Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989) (holding the same).

Here, Claimants argue that the ability to seek recovery under CAFRA is a significant right, the loss of which would constitute substantial legal prejudice. Certainly, the damage inflicted upon an innocent person or business is immense when, although it has done nothing wrong, its money and property are seized. Congress, acknowledging the harsh realities of civil forfeiture practice, sought to lessen the blow to innocent citizens who have had their property stripped from them by the Government. Through CAFRA, Congress provided for relief in such cases. This court will not discard lightly the right of a citizen to seek the relief Congress has afforded. The court concludes that deprivation of such a right would work a substantial legal prejudice.

### 2. A voluntary dismissal without prejudice would likely deprive Claimants of their right to seek recovery under CAFRA.

Under CAFRA, a claimant can recover his reasonable attorney fees and litigation costs only if he has "substantially prevailed" in a civil forfeiture proceeding. 28 U.S.C. § 2465(b)(1). A number of courts have held that a claimant has not substantially prevailed where the forfeiture proceeding was voluntarily dismissed without prejudice. *See, e.g., United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars & Fifty Six Cents ($32,820.56) in U.S. Currency*, 106

F. Supp. 3d 990, 995 (N.D. Iowa 2015); *United States v. Ito*, 472 F. App'x 841, 842 (9th Cir. May 14, 2012); *United States v. Dougherty*, 486 F. App'x 621, 622 (8th Cir. Sept. 10, 2012). Indeed, this court can find no examples of any court reaching the opposite conclusion. Those courts that have considered the issue primarily rely on the Supreme Court's rationale regarding fee-shifting provisions found in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). In *Buckhannon*, the Court held that prevailing party status requires an "alteration in the legal relationship of the parties." *Id.* at 605. Thus, an enforceable judgment on the merits and a court-ordered consent decree carry the necessary "judicial imprimatur" to convey prevailing party status, while a voluntary change in a party's conduct—despite being inspired by a lawsuit—does not. *Id.* Applying *Buckhannon* to the fee-shifting provision in CAFRA, courts nationwide have concluded that, because the plaintiff is free to re-file his suit against the defendant, a dismissal without prejudice "lacks the required judicial imprimatur to qualify as a material alteration of the parties' legal relationship." *$32,820.56*, 106 F. Supp. 3d at 995.

The Fourth Circuit has not yet addressed this issue, although it is poised to do so in *United States v. Bednar*, No. 15-2232 (4th Cir. 2015). The district court in that case, on facts remarkably similar to the instant case, allowed the Government's motion to dismiss without prejudice, with no discussion of its reasoning. *United States v. Funds Contained in the Better Business Checking Account Numbered 802070987 and the Business Sweep Account Numbered 802121715 at Capital Bank, up to $359,557.25*, No. 5:14-CV-476-FL (E.D.N.C. June 5, 2015). The Government's argument before the Fourth Circuit is, unsurprisingly, that a dismissal without prejudice precludes recovery under CAFRA. *See* Brief of the United States at 6–7, *United States v. Bednar*, No. 15-2232 (4th Cir. 2015).

8

The court finds that, although it is not a foregone conclusion, it is highly likely that the Fourth Circuit will adopt the reasoning shared by every other court to have considered the question. Therefore, a voluntary dismissal without prejudice would likely preclude prevailing party status under CAFRA, depriving Claimants of their right to bring a claim under that statute. Further, the court considers this likelihood of deprivation great enough to constitute a substantial legal prejudice. Accordingly, this action is DISMISSED with prejudice.[3]

**B. Issuance of a certificate of reasonable cause is appropriate.**

In addition to its motion to dismiss, the Government also moves for a certificate of reasonable cause. Such a certificate is designed to protect law enforcement and prosecutors involved in the wrongful seizure of property, so long as "reasonable cause" existed for the seizure. *See United States v. Mach. Gun 30.06*, 904 F. Supp. 622, 636 (N.D. Ohio 1995). Under CAFRA, a certificate of reasonable cause must issue "[u]pon the entry of a judgment for the claimant" in a civil forfeiture proceeding "if it appears that there was reasonable cause for the seizure or arrest." 28 U.S.C. § 2465(a)(2). Despite § 2465's language, courts have issued certificates in cases that ended in a voluntary dismissal rather than a judgment in favor of the claimant. *See id.*; *United States v. Prop. Identified as 1300 Florida Ave., N.E. Washington, D.C.*, No. Civ. A. 88-3409-LFO, 1989 WL 315184, at *2 (D.D.C. Sept. 19, 1989). A certificate may issue in this case, therefore, provided that reasonable cause existed for seizure of the contents of the Lumbee Guaranty Bank account.

Reasonable cause is synonymous with probable cause. *Heien v. North Carolina*, 135 S. Ct. 530, 537 (2014); *see also Stacey v. Emery*, 97 U.S. 642, 646 (1878) ("If there was a probable cause of seizure, there was a reasonable cause. If there was a reasonable cause of seizure, there

---

[3] The court notes that Claimants requested, in the alternative, that the court condition a grant of the Government's motion on payment of attorney fees and costs to Claimants. Because the court grants Claimants' primary request—to deny the Government's motion— it need not consider their alternative request.

was a probable cause."). Generally, a Magistrate Judge's issuance of a warrant for seizure of property is "enough, standing alone, for a court later to certify reasonable cause," so long as no facts exist to "undermin[e] a reasonable belief in the existence of probable cause." *Mach. Gun 30.06*, 904 F. Supp. 640.

Here, Magistrate Judge Jones determined there was probable cause sufficient to seize Claimants' bank account. Claimants offer no facts that would undermine the court's confidence in that decision. Accordingly, a certificate of reasonable cause is appropriate in this case.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Voluntary Dismissal Without Prejudice [DE-18] is DENIED. This action is DISMISSED with prejudice, and the Clerk of Court is DIRECTED to close this case. The Government's motion for issuance of a certificate of reasonable cause is ALLOWED.

SO ORDERED.

This, the 1· day of February, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge